IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


| | | |
|---|---|---|
| JEAN MARIE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 19-108-MN-MPT |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This action arises from the denial of Jean Marie Smith's ("plaintiff") claim for

Social Security benefits.  On August 25, 2014, plaintiff filed an application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the

"Act").[1]  On September 4, 2014, plaintiff filed an application for Social Security Disability

Insurance Benefits ("DIB") and Disabled Widow's Benefits ("DWB") under Title II of the

Act.[2]  In her initial application and disability report, plaintiff alleged disability beginning

January 1, 2002 due to conditions including:  hepatitis C, pain in her lumbar disc,

pinched nerve, torn tendon in shoulder, fibromyalgia, and neuropathy in her hands and

feet.[3]  Plaintiff later amended the alleged onset date to November 23, 2013, and as a

result is not entitled to a period of disability and DIB under Title II of the Act because the

_____

[1] D.I. 8-2 at 16.
[2] *Id.*
[3] D.I. 8-3 at 123.

claimant would not have disability insured status on the date of onset.[4]  Her claim was

denied initially on December 19, 2014, and denied again upon reconsideration on

August 19, 2015.[5]  On September 1, 2015, plaintiff filed a written request for a hearing

before an Administrative Law Judge ("ALJ"), and a video hearing was held by the ALJ

on July 20, 2017.[6]  At the hearing, testimony was provided by plaintiff, who was

represented by counsel, and by Kenneth Ogren, a vocational expert ("VE").[7]  The ALJ

determined plaintiff did not qualify as "disabled" under sections 202(e), 223(d) or

1614(a)(3)(A) of the Social Security Act and denied her request for benefits in a

decision dated August 18, 2017.[8]  Following the ALJ's unfavorable decision, plaintiff

filed a request for review, which the Appeals Council denied on November 15, 2018.[9]

Plaintiff brought a civil action in this court challenging the ALJ's decision on January 18,

2019, and presently before the court are the parties' cross motions for summary

judgment.[10]  For the following reasons, it is recommended that plaintiff's motion for

summary judgment be granted in part and denied in part, and that defendant's motion

for summary judgment be granted in part and denied in part.

---

[4] D.I. 8-2 at 16; 20 C.F.R. 404.130 404.131 and 404.315.
[5] D.I. 8-2 at 16.
[6] *Id.*
[7] D.I. 8-2 at 47 (beginning of plaintiff's testimony); D.I. 8-2 at 62 (beginning of VE's testimony).
[8] D.I. 8-2 at 32.
[9] *Id.* at 1 (finding no reason to review ALJ decision and denying request for review).
[10] D.I. 2 (Pl. Compl.); D.I. 13 (plaintiff's motion for summary judgment); D.I. 16 (defendant's motion for summary judgment).

## II.    BACKGROUND

Plaintiff was born on November 23, 1963.[11]  She attended school up to seventh grade.[12]  Her prior relevant work was as a cook and a leasing consultant.[13]  The onset of her alleged disability was November 23, 2013.[14]  Plaintiff alleges several physical and mental impairments that "affected her ability to perform competitive work."[15]  Plaintiff alleges disability due to hepatitis C, lumbar disc disease, pinched nerve, torn tendon in shoulder, fibromyalgia, neuropathy in hands and feet, migraine headaches, panic attacks, anxiety, and depression.[16]  She argues the ALJ failed to consider all of her credibly-established limitations in the hypothetical question posed to VE.[17]  Further, plaintiff argues the ALJ erred in determining that she had a residual functional capacity ("RFC") for light work.[18]  To be eligible for disability benefits, plaintiff must demonstrate she is disabled under Titles XVI and II the Act, which have the same standard as discussed below.

### A.    Evidence Presented

Plaintiff allegedly suffers a wide variety of physical and mental ailments, but the issues presented to the court are limited to alleged errors by the ALJ.  Plaintiff presented extensive records regarding carpal tunnel syndrome and cervical radiculopathy (degenerative disc disease), mental health (understanding, remembering

---

[11] D.I. 8-3 at 66.
[12] D.I. 8-2 at 48-49.
[13] D.I. 8-3 at 81.
[14] *Id.* at 66; D.I. 14 at 2.
[15] D.I. 14 at 9; *see* D.I. 8-3 at 75.
[16] *Id.* at 2.
[17] *Id.* at 12.
[18] *Id.* at 21.

3

or applying information, interacting with others, concentrating, and adapting and managing oneself), environmental limitations due to asthma, and digestive, bowel and bladder difficulties.

### 1.    Physical Impairments

Plaintiff had a borderline positive rheumatoid factor in 2007, prior to the alleged onset date, but plaintiff's rheumatologist felt this examination was not suggestive of rheumatoid arthritis.[19]  Plaintiff then returned for another evaluation in December 2015, and at that time the rheumatologist noted that examinations of her upper and lower extremities were generally unremarkable.[20]  In October 2016, plaintiff was given a trial of Plaquenil and by January 2017, plaintiff was "much improved" and exhibited no peripheral synovitis and no tenderness to palpation in her hands.[21]

Plaintiff also has a longstanding history of headaches beginning at the age of twenty.[22]  However, according to her healthcare providers in April 2015, plaintiff's headaches improved after receiving treatment and she denied experiencing any additional headaches on multiple occasions.[23]  Due to this, the ALJ found these headaches to be non-severe, and plaintiff does not dispute these findings.[24]

Additionally, plaintiff alleged disability due to breathing issues and asthma. Extensive medical records show that plaintiff has been receiving medication and has

---

[19] D.I. 8-2 at 20.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 20-21.

presented normal lung examinations during the period of alleged disability.[25]
Furthermore, results of a spirometry taken in September 2015 revealed only mild
obstructive ventilator deficit.[26]  Plaintiff has also continued to smoke tobacco during this
period despite her providers' recommended cessation, and has only intermittently used
her inhaler.[27]  As a result, the ALJ found that plaintiff's breathing issues and asthma
were non-severe.[28]

Plaintiff also alleged disability due to digestive, bladder, and bowel issues
including irritable bowel syndrome, colitis, interstitial cystitis, and gastroesophageal
reflux disease.  An upper endoscopy taken in January 2016 revealed findings
consistent with mild chronic gastritis, but plaintiff denied any gastrointestinal symptoms
in June 2016.[29]  Plaintiff complained of dysuria in July 2016, but a subsequent
cystoscopy revealed generally normal findings.[30]  Plaintiff followed up in October 2016
with complaints of bladder pain.[31]  Plaintiff's provider noted interstitial cystitis as a
potential diagnosis and recommended a low acid diet and medication as well as a two
month follow-up appointment which plaintiff never scheduled.[32]  Additionally, plaintiff
complained of fecal urgency in January 2017.[33]  Based on these findings, the ALJ
determined that these issues were non-severe.[34]

---

[25] *Id*. at 21.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.* at 21-22.

### 2.    Mental Impairments

Plaintiff was found to have medically determinable mental impairments of anxiety and affective disorders.[35]  According to plaintiff's function report, she noted difficulties with personal care items, but attributed these limitations to her physical impairments rather than her mental impairments and denied needing any special reminders to take care of personal needs, grooming, or medications.[36]

Plaintiff explained she has problems getting along with family, friends, neighbors, or others, and has trouble with handling stress and changes in routine.[37]  Plaintiff conceded, however, that her depression is linked to increased stressors involving her finances and increased babysitting duties.[38]  Plaintiff has never received any formal mental health treatment including psychotherapy, hospitalization, or medication management services except for the medication prescribed by her primary care provider.[39]  Furthermore, on multiple occasions plaintiff denied any feelings of depression, nervousness, or mood change, and presented alert, cooperative, and with normal attention span and concentration on multiple occasions.[40]

Based on these findings, the ALJ determined that plaintiff had only "mild" limitations with regard to her capacity for understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and

---

[35] D.I. 8-2 at 22.
[36] D.I. 8-6 at 317-336; D.I. 8-7 at 359-366.
[37] D.I. 8-6 at 317-338.
[38] *Id.*
[39] D.I. 8-2 at 22.
[40] *Id.*

adapting or managing oneself, and as such was non-severe.[41]

**B.    Hearing Testimony**

**1.    Plaintiff Testimony**

At the July 20, 2017 administrative hearing, plaintiff testified to her background, work history, education, and alleged disability.[42]  Plaintiff received up to a seventh grade education and does not have a GED.[43]  Plaintiff was previously employed cleaning hallways but was unable to perform her duties because carrying the cleaning supplies up and down flights of stairs was too physically demanding.[44]  She informed her manager of her limitations, and was transferred to an office role to assist with leasing work.[45]  After working in this position for about a year and a half, she was fired from the position for unspecified reasons.[46]  Plaintiff attempted to then work in home health care, but according to plaintiff, "that wasn't good for me either."[47]

Plaintiff then explained some of the medical issues she faced throughout her life, including pain in her lower back, legs, neck, hands, arms, and abdomen.[48]  She described this pain as constant and experiences these symptoms all the time.[49]  She further testified that she lives with her boyfriend, who assists her with daily activities such as getting dressed, but can do chores around her home unassisted.[50]

--------

[41] *Id.*
[42] *Id.* at 40-65.
[43] *Id.* at 48.
[44] *Id.* at 49.
[45] *Id.*
[46] *Id.* at 49-50.
[47] *Id.* at 50.
[48] *Id.* at 50-56.
[49] *Id.*
[50] *Id.* at 59-61.

## 2.    Vocational Expert Testimony

Testimony was provided at the hearing by a VE, Kenneth Ogren.[51]  Mr. Ogren addressed hypothetical questions posed by the ALJ.  The ALJ asked the VE whether a hypothetical individual of plaintiff's age, education, and work history could perform work at a light exertional level "limited to only occasionally climbing ramps or stairs, occasional balancing, stooping, kneeling, crouching or crawling but would be incapable of climbing ladders, ropes, or scaffolds."[52]  Mr. Ogren testified there are several jobs within the national economy that an individual with these hypothetical limitations could perform.[53]

The ALJ then added environmental limitations to the same hypothetical, including "that this individual should avoid concentrated exposure to vibration and respiratory irritants."[54]  Mr. Ogren testified that with these additional limitations, there would be no jobs available in the national economy for this hypothetical individual.[55]

## C.    The ALJ's Finding of Facts and Conclusions of Law

Based on the medical evidence and testimony presented, the ALJ determined plaintiff not disabled.  The ALJ's findings are summarized as follows:

1.    Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2007.[56]

2.    Plaintiff is the unmarried widow of the deceased insured worker and has attained the age of 50.  Plaintiff met the non-disability requirements for

---

[51] *Id*. at 40.
[52] *Id.* at 62-63.
[53] *Id.* at 63.
[54] *Id.*
[55] *Id.*
[56] *Id.* at 19.

8

disabled widow's benefits set forth in section 202(e) of the Social Security Act.[57]

3.  The prescribed period ends on May 31, 2020.[58]

4.  Plaintiff has not engaged in substantial gainful activity since November 23, 2013, the amended alleged onset date (*20 CFR 404.1571 et seq.*, and 416.971 *et seq.*).[59]

5.  Plaintiff has the following severe impairments: degenerative disc disease, degenerative joint disease, fibromyalgia, hepatitis C, obesity, and carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).[60]

6.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[61]

7.  Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: Plaintiff is limited to only occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling. Additionally, she is limited to work that does not involve climbing of ladders, ropes, or scaffolds.[62]

8.  Plaintiff has no past relevant work (20 CFR 404.1565 and 416.965).[63]

9.  Plaintiff was born on November 23, 1963, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).[64]

10. Plaintiff has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).[65]

---

[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.* at 23.
[62] *Id.* at 24.
[63] *Id.* at 31.
[64] *Id.*
[65] *Id.*

11.     Transferability of job skills is not an issue because plaintiff does not have past relevant work (20 CFR 404.1568 and 416.968).[66]

12.     Considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[67]

13.     Plaintiff has not been under a disability, as defined in the Social Security Act, from November 23, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).[68]

The ALJ concluded that "[b]ased on the application for disabled widow's benefits filed on September 4, 2014, [plaintiff] is not disabled under sections 202(e) and 223(d) of the Social Security Act."[69] Additionally, "[b]ased on the application for supplemental security income protectively filed on August 25, 2014, [plaintiff] is not disabled under section 1614(a)(3)(A) of the Social Security Act."[70]

## III.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[71] If no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[72]

---

[66] *Id.*
[67] *Id.*
[68] *Id.* at 32.
[69] *Id.*
[70] *Id.*
[71] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).
[72] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (citing FED. R. CIV. P. 56(c)).

This standard does not change merely because there are cross-motions for summary judgment.[73]  Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[74]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[75]

## B.    Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of an ALJ's decision.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not include substantial evidence to support the ALJ's decision.  The Commissioner's factual decisions remain if supported by substantial evidence.[76]  Substantial evidence means less than a preponderance of the evidence, but more than a mere scintilla of evidence.[77]  As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[78]

In determining whether substantial evidence supports the Commissioner's

---

[73] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[74] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[75] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[76] 42 U.S.C. *§§* 405(g), 1383(c)(3); *see also Monsour Medical Center v. Heckle*m, 806 F .2d 1185, 1190 (3d Cir. 1986).
[77] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).
[78] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

findings, the court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record.[79]  The court's review remains limited to the evidence actually presented to the ALJ.[80]  The Third Circuit has explained:

> a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion.[81]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[82]  Even if the court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence.[83]

Where "review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[84]  In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme Court held:

> a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more

---

[79] *Monsour*, 806 F.2d at 1190.
[80] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).
[81] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[82] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[83] *Monsour*, 806 F.2d at 1190-91.
[84] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).

adequate or proper basis.[85]

The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[86] Thus, this court's review is limited to the four corners of the ALJ's decision.[87]

### C.    ALJ Disability Determination Standard

Title II of the Social Security Act, 42 U.S.C. § 423(a)(l)(D), "provides for the payment of insurance benefits" to those who contributed to the program and suffer from a physical or mental disability.[88] To qualify for DIB, a claimant must establish that she was disabled prior to the date she was last insured.[89] A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least twelve months.[90] To be disabled, the severity of the impairment must prevent return to previous work, and considering age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[91]

### 1.    Five-Step Test

In determining whether a person is disabled, the Commissioner is required to

---

[85] 332 U.S. 194, 196 (1947).
[86] *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).
[87] *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).
[88] *Bowen*, 482 U.S. at 140.
[89] 20 C.F.R. § 404.131.
[90] 42 U.S.C. §§ 423(d)(l)(A), 1382(c)(a)(3).
[91] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

perform a five-step sequential analysis.[92]  If a finding of disability or non-disability can

be made at any point in the sequential process, the Commissioner will not review the

claim further.[93]  At the first step, the Commissioner must determine whether the

claimant is engaged in any substantial gainful activity.  If the claimant is so engaged, a

finding of non-disabled is required.[94]  If the claimant is not, step two requires the

Commissioner to determine whether the claimant is suffering from a severe impairment

or a combination of impairments that is severe.  If the claimant is not suffering from

either, a finding of non-disabled is required.[95]

If the claimant's impairments are severe, the Commissioner, at the third step,

compares the claimant's impairments to a list of impairments (the "listings") that are

presumed severe enough to preclude any gainful work.[96]  When a claimant's

impairment or its equivalent matches an impairment in the listing, the claimant is

presumed disabled.[97]  If a claimant's impairments, either singularly or in combination,

fail to meet or medically equal any listing, the analysis continues to steps four and five.[98]

At step four, the Commissioner determines whether the claimant retains the RFC to

perform her past relevant work.[99]  A claimant's RFC is "that which an individual is still

able to do despite the limitations caused by [her] impairment(s)."[100]  "The claimant

_____

[92] 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422,427-28 (3d
Cir. 1999).
[93] 20 C.F.R. § 404.1520(a)(4).
[94] 20 C.F.R. § 404.1520(a)(4)(i).
[95] 20 C.F.R. § 404.1520(a)(4)(ii).
[96] 20 C.F.R. § 404.1520(a)(4)(iii); *see also Plummer*, 186 F.3d at 428.
[97] 20 C.F.R. § 404.1520(a)(4)(iii).
[98] 20 C.F.R. § 404.1520(e).
[99] 20 C.F.R.. § 404.1520(a)(4)(iv); *see also Plummer*, 186 F.3d at 428.
[100] *Fargnoli*, 247 F.3d at 40.

bears the burden of demonstrating an inability to return to [her] past relevant work."[101]

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work.[102]  At this last step, the burden rests with the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[103]  In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments, and often seeks the assistance of a vocational expert.[104]

## 2.    Weight Given to Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."[105]  Moreover, such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record.[106]

The ALJ must consider medical findings supporting the treating physician's

---

[101] *Plummer*, 186 F.3d at 428.
[102] 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.
[103] 20 C.F.R. § 404.1520(g).
[104] *See id.*
[105] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).
[106] *Fargnoli*, 247 F.3d at 43.

opinion that the claimant is disabled.[107]  If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports," and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence."[108]

However, a statement by a treating source that a claimant is "disabled" is not a medical opinion; rather, it is an opinion on an issue reserved to the ALJ because it is a finding that is dispositive of the case.[109]  Therefore, only the ALJ can make a disability determination.[110]

### 3.     Evaluation of Subjective Accounts of Pain

Statements about the symptoms alone never establish the existence of any impairment or disability.[111]  The Social Security Administration uses a two-step process to evaluate the existence and severity of symptoms.[112]

### a.     Existence of Pain

First, the ALJ must find a medically determinable impairment, proven with medically acceptable clinical and laboratory diagnostic data, that could reasonably be expected to produce the claimant's symptoms.[113]  Otherwise, the ALJ cannot find the applicant disabled, no matter how genuine the symptoms appear to be.[114]

---

[107] *Morales v. Apfel*, 225 F.3d 310, 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).
[108] *Plummer*, 186 F.3d at 429.
[109] *See* 20 C.F.R. § 416.927(e)(1).
[110] *See* 20 C.F.R. § 416.927(d)(1).
[111] *See* 20 C.F.R. §§ 416.928-29; *see also* SSR 16-3p.
[112] *Id.*
[113] 20 C.F.R. § 416.929(b).
[114] *Id.*

This step does not consider the intensity, persistence, and limiting effects of the symptoms on the claimant; it only verifies whether a medical condition exists that could objectively cause the existence of the symptom.[115]

Analysis stops at this step where the objectively determinable impairment meets an impairment listed on 20 CFR Part 404, Subpart P, Appendix 1, because the claimant is considered disabled *per se*.[116]

### b.    Severity of Pain

At step two, the ALJ must determine the extent to which the symptoms limit the claimant's ability to do basic work activities.[117]  At this step, the ALJ must consider the entire record, including medical signs, laboratory findings, the claimant's statements about her symptoms, any other information provided by treating or examining physicians, psychiatrists and psychologists, and any other relevant evidence in the record, such as the claimant's account of how the symptoms affect her activities of daily living and ability to work.[118]  "[A] State agency medical or psychological consultant . . . designated by the Commissioner directly participates in determining whether [claimant's] medically determinable impairment(s) could reasonably be expected to produce [claimant's] alleged symptoms."[119] Where more information is needed to assess a claimant's impairments, the ALJ must consider the following factors relevant to symptoms, only when such additional information is needed:

---

[115] *Id.*
[116] 20 C.F.R. § 416.925.
[117] 20 C.F.R. § 416.929(c).
[118] 20 C.F.R. § 404.1529.
[119] 20 C.F.R. § 404.1529(b).

(i)  The applicant's account of daily activities;

(ii)  The location, duration, frequency, and intensity of pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms;

(v)  Treatment, other than medication, the applicant receives or has received for relief of pain or other symptoms;

(vi)  Any measures the applicant uses or has used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning functional limitations and restrictions due to pain or other symptoms.[120]

### 4.    Evaluation of Plaintiff's Subjective Complaints

The ALJ must consider all of the evidence in the record to evaluate the intensity and persistence of symptoms after the ALJ finds that the claimant has an impairment that someone could reasonably expect to produce those symptoms.[121]  The ALJ considers a claimant's symptoms, including pain, and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."[122]  Effective March 28, 2016, Social Security

---

[120] *See* 20 C.F.R. § 404.1529(c).
[121] *See* SSR 16-3p.
[122] *See id.*

Ruling ("SSR") 16-3p superseded 96-7p.[123] SSR 96-7p required the ALJ to make a finding as to the credibility of a claimant to determine the weight the ALJ should afford to the claimant's alleged symptoms.[124] The Social Security Administration ("SSA") eliminated the use of the term "credibility" to avoid the potential misunderstanding that the subjective evaluation of a claimant's symptoms is an examination of an individual's character.[125] The SSA initiated SSR 16-3p to "clarify that subjective symptom evaluation is not an examination of an individual's character," but instead requires an ALJ to determine the weight given to a claimant's alleged symptoms based on the consistency of the alleged symptoms with the medical evidence of record.[126] The ALJ must rely upon SSRs as precedents in adjudicating cases.[127]

Unlike the prior "credibility" determination under SSR 16-3p, a claimant's statements, reports from medical sources and other persons, and any other relevant information in the record provide the ALJ with an overview of the subjective complaints to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. The weight afforded a claimant's statements depends on the consistency with the medical evidence of record. Where SSR 96-7p required the ALJ to look at consistencies and inconsistencies in the record to determine credibility, under SSR 16-3p, the ALJ reviews the claimant's statements to determine their consistency with the record medical evidence to decide the weight afforded the claimant's statement

---

[123] *See id.*
[124] *See* SSR 96-7p.
[125] *See* SSR 16-3p.
[126] *See id.*
[127] See 20 C.F.R. § 402.35.

in making a disability determination. SSR 16-3p states that the ALJ must make a disability determination based on the claimant's statements about her symptoms along with evidence in the record relevant to the alleged impairments.[128]

In evaluating an individual's symptoms, the ALJ may "not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation."[129] Instead, the ALJ must "focus on whether the record evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms . . . ."[130] Based on an ALJ's evaluation of the record and the claimant's alleged symptoms, the ALJ must determine whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.[131]

### 5. Medical Expert Testimony

The onset date of disability is determined from the medical records and reports and other similar evidence, which requires the ALJ to apply informed judgment.[132] At the hearing, the ALJ should call on the services of a medical advisor when onset must be inferred.[133]

## IV. DISCUSSION

### A. Parties' Contentions

---

[128] *See* SSR 16-3p.
[129] *Id.*
[130] *Id.*
[131] *Id.*
[132] *See* SSR 83-20.
[133] *Id.*

In her appeal, plaintiff maintains that the ALJ committed legal error by failing to properly consider all of her credibly-established limitations in the hypothetical question posed to the VE, including (1) manipulative limitations related to plaintiff's carpal tunnel syndrome, cervical radiculopathy, and osteoarthritis of the hands, (2) environmental limitations identified by state agency consultants, (3) limitations on plaintiff's ability to work due to symptoms related to her digestive, bowel, or bladder issues, and (4) mental limitations identified by the ALJ.[134]  Additionally, plaintiff believes the ALJ erred in determining she had the residual functional capacity to perform light work when evidence would support a capacity to only perform sedentary work.[135]

Defendant contends plaintiff failed to meet her burden to demonstrate that a credibly-established limitation resulting from her non-severe impairments was improperly disregarded by the ALJ in the hypothetical question submitted to the VE, or in the RFC.[136]  Defendant asserts that the ALJ's opinion properly considered all of plaintiff's credibly-established limitations, including the ones that plaintiff alleges were omitted.[137]  Further, defendant maintains that substantial evidence supports the RFC determination that plaintiff could perform light work.[138]

### B.      Appropriateness of the ALJ's Assessment

Title II of the Social Security Act, 42 U.S.C. § 423(a)(l)(D), "provides for the payment of insurance benefits" to those who contribute to the program and suffer from

---

[134] D.I. 14 at 12.
[135] *Id.* at 22.
[136] D.I. 17 at 16.
[137] *Id.* at 11.
[138] *Id.* at 17, 19.

a physical or mental disability.[139]  A claimant must establish she was disabled prior to the date she was last insured in order to qualify for disability insurance benefits.[140]  A "disability" as defined by the statute is the inability to do any substantial gainful activity because of a medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least twelve months.[141]  The present issue before the court is whether the ALJ properly applied the legal standards in making his disability determination, i.e., whether "substantial evidence" supports the ALJ's decision.[142]

Plaintiff's overarching contentions are the following:  (1) the ALJ erred by failing to account for all functional limitations stemming from her impairments in his RFC, and (2) the hypothetical question posed to the VE was deficient based the failure to include all functional limitations.  The court reviews the ALJ's decision to determine whether his denial of benefits is consistent with the required standards.[143]

### 1.    Weight Accorded to Medical Opinion Evidence

It is the exclusive responsibility of the ALJ to weigh the evidence in the record as a whole when making a disability decision.[144]  That evidence may contain differing medical opinions from both treating and non-treating physicians, as well as other testimony.[145]  Normally, evidence from a treating physician is given controlling weight,

---

[139] *Bowen*, 482 U.S. at 140.
[140] 20 C.F.R. § 404.131.
[141] 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).
[142] *See supra* part III (B).
[143] *See supra* part III (C).
[144] *See* 20 C.F.R. 404.1527(e)(2).
[145] *See* 20 C.F.R. 404.1512.

as that individual may be most acquainted with the medical history of the claimant.[146]

However, in circumstances where the treating physician's opinion is not consistent with the record as a whole, or is not well supported by "medically acceptable clinical and laboratory diagnostic techniques," an ALJ may reasonably accord little weight to the treating physician's opinion.[147]

In this matter, the ALJ weighed the medical opinions of State agency medical consultants Vinod Kataria, M.D., Darrin Campo, M.D., and Brian Shinkle, M.D..[148] The ALJ determined that, as a general matter, State agency medical consultants' opinions do not deserve as much weight as those of a treating physician, but their opinions do deserve some weight as "they have a high level of understanding of the Social Security disability program and enjoy a review of all the available evidence in the record when forming their opinion."[149]

Similarly, the ALJ weighed the assessments of State agency psychological consultants Christopher King, Psy.D, and Carlene Tucker-Okine, Ph.D..[150] Due to a combination of "a high level of understanding of the Social Security disability program and [the ability to] enjoy a review of all the available evidence in the record," plus their assessments being supported by the record, the ALJ gave their assessments "great weight" in his decision.[151]

---

[146] *See* 20 C.F.R. 404.1527(c)(2).
[147] *Id.*
[148] D.I. 8-2 at 28-29.
[149] *Id.* at 28.
[150] *Id.* at 29.
[151] *Id.*

Lastly, the ALJ considered the assessments provided by the claimant's primary care provider, Jon Yeargan, M.D..[152]  Dr. Yeargan's assessments were given little weight by the ALJ, for the following reasons:  (1) Dr. Yeargan's assessments were provided in "checklist-style form," with very little support or explanation, (2) his limitations were based largely on plaintiff's subjective complaints rather the objective findings that support these limitations, (3) Dr. Yeargan referred plaintiff to treatment specialists with respect to her severe impairments and acknowledged his inability to estimate the claimant's capacity for performing hand, finger, and arm motions, and (4) the treatment record lacks ongoing treatment notes from Dr. Yeargan following plaintiff's August 2016 visit that would substantiate the limitations he listed in his July 2017 report.[153]

Plaintiff does not challenge the weight accorded to any of the medical experts, and the court finds proper weight was given to all medical opinions based on supporting evidence.

## 2.    Factors in VE Hypothetical

Plaintiff argues the ALJ posed a defective hypothetical question to the VE by failing to include all of her credibly-established limitations which were supported by substantial evidence.[154]  The Third Circuit Court of Appeals has stated that an ALJ is not required "to submit to the vocational expert every impairment alleged by a claimant . . . [but] the hypotheticals posed must 'accurately portray' the claimant's impairments,

---

[152] *Id.*
[153] *Id.* at 30.
[154] D.I. 14 at 12.

and the expert must be given the opportunity to evaluate those impairments 'as contained in the record.'"[155]

The ALJ posed the following hypothetical question to the VE:

> I want to assume that the individual who's the same age as [plaintiff], she is now 53 with the same limited educational background and the same past work experience. Let's begin by assuming that this individual retains the residual functional capacity for light work that would be limited to only occasional climbing ramps or stairs, occasional balancing, stooping, kneeling, crouching, or crawling but would be incapable of climbing ladders, ropes or scaffolds. Could you identify any jobs for this hypothetical?[156]

Based on this hypothetical, the VE was able to identify several jobs in the national economy that plaintiff would be able to perform.[157] The ALJ then added to the hypothetical that the "individual should avoid concentrated exposure to vibration and respiratory irritants."[158] The VE was unable to identify any jobs in the national economy with the additional limitations.[159] In spite of the VE's final conclusion, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."[160]

### a. Manipulative Limitations

Plaintiff contends that the ALJ failed to consider her difficulties using her arms

---

[155] *Rutherford v. Barnhart*, 399 F.3d 546, 553-54 (3d Cir. 2005) (explaining proper interpretation of the requirement that hypothetical questions to the VE "must reflect all of a claimant's impairments") (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).
[156] D.I. 8-2 at 62-63.
[157] *Id.* at 63.
[158] *Id.*
[159] *Id.*
[160] *Id.* at 32.

and hands for lifting, reaching, handling, and fingering due to a combination of carpal tunnel syndrome, cervical radiculopathy, and osteoarthritis of the hands.[161] Plaintiff supports this contention with a variety of evidence, including diagnostic studies, examination findings, medical opinions, and plaintiff's testimony.[162]

Plaintiff provides evidence that an MRI of the cervical spine in October 2016 showed severe osteoarthritic degenerative changes which caused stenosis and encroachment of the exiting left C4 nerve root, and several physicians diagnosed her with cervical radiculopathy, but argues the ALJ failed to explain why he discounted those findings.[163] Dr. Yeargan's medical opinion showed plaintiff had significant limitations in her ability to reach, handle, and finger.[164] Plaintiff's written and hearing testimony support Dr. Yeargan's reported limitations.[165]

Defendant responds by citing evidence from plaintiff's rheumatologist reporting that the osteoarthritis in her hands was "much improved" as of January 2017, and also noting that plaintiff had "no periphereal synovitis," and had no tenderness in her hands.[166] Plaintiff argues that this same January 2017 testing showed a positive Tinel's test on her left hand.[167] That same test, however, showed plaintiff had full range of motion.[168]

---

[161] D.I. 14 at 14-17.
[162] *Id.*
[163] D.I. 8-13 at 903; D.I. 8-2 at 27.
[164] D.I. 8-13 at 903.
[165] D.I. 8-2 at 54-55.
[166] D.I. 8-2 at 20; D.I. 8-12 at 809-12.
[167] D.I. 8-12 at 804.
[168] D.I. 8-2 at 20.

The ALJ's opinion noted that as a primary care provider, Dr. Yeargan's assessment is deserving of less weight than that of a more specialized, treating provider.[169] The ALJ, therefore, deferred to the rheumatologist's assessments of plaintiff's range of motion and manipulative limitations rather than plaintiff's primary care provider. Plaintiff's contention that "the ALJ made no reference to any manipulative limitations or explained in any clear manner why none were included" is without merit.[170] The ALJ established the evidence demonstrates plaintiff retains the functional abilities to perform work at the light exertional level with postural limitations, based in part on her "left wrist pain with painful range of motion."[171] As such, the ALJ properly assessed the medical record and based his decision on substantial evidence.

### b. Mental and other Non-Exertional Limitations

Plaintiff also asserts the ALJ failed to include her mild limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself.[172]

Plaintiff contends that because the ALJ found that her anxiety and affective disorders were medically determinable but non-severe impairments, the hypothetical question posed to the VE was deficient and requires remand.[173] The ALJ considered these mental limitations and addressed them in his RFC determination.

---

[169] *Id.* at 30.
[170] D.I. 20 at 3.
[171] D.I. 8-2 at 28.
[172] D.I. 14 at 17.
[173] D.I. 14 at 17; D.I. 8-2 at 22.

As discussed above, the ALJ provided little weight to Dr. Yeargan's diagnosis of mental limitations. The ALJ recognized plaintiff's mental limitations described by Dr. Yeargan, including being "off-task" due to symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks twenty-five percent or more of the typical workday and only being capable of low stress work; however, the ALJ determined this was not supported by evidence in the record.[174]

The ALJ noted plaintiff did not receive any formal mental health treatment in the form of psychotherapy, hospitalization, or medication management services except for medication prescribed by her primary care provider.[175] Furthermore, leading up to and following her amended alleged onset date, plaintiff attributed her depression to increased stressors involving her finances and increased babysitting duties.[176] Finally, plaintiff denied any feelings of depression, nervousness, or mood change, and she presented alert, cooperative, and had a normal attention span and concentration on multiple occasions.[177]

The ALJ's RFC determination also noted the assessments of the State agency psychological consultants showed plaintiff's mental impairments caused minimal work-related limitations and thus were non-severe.[178] The ALJ recognized these assessments should be given "great weight" because: (1) plaintiff reported generally normal mental health functioning in her function report, (2) plaintiff did not receive any

---

[174] D.I. 8-2 at 29.
[175] *Id.* at 22.
[176] *Id.*
[177] *Id.*
[178] *Id.* at 29.

formal mental health counseling or therapy treatment during the period of alleged disability, (3) plaintiff presented with normal mental status examinations at times, and (4) plaintiff attributed her increased symptoms to life stressors.[179]  The ALJ properly considered the evidence in the record when determining plaintiff's RFC, and as such, plaintiff's mental limitations were properly considered and there is no error in their omission from the hypothetical posed to the VE.

### c.    Environmental Limitations

Plaintiff argues the ALJ erred in failing to include environmental limitations proposed by the state agency consultants which the VE identified as eliminating potential positions in the national economy available to plaintiff.[180]  Plaintiff contends the ALJ improperly discounted the environmental limitations proposed by state agency consultants because her normal gait, normal muscle strength, and heel toe walking from a January 2017 examination, which the ALJ relied upon to exclude environmental limitations, had no direct correlation to plaintiff's breathing difficulties and need for an inhaler.[181]  The ALJ's opinion includes these test results in his decision, but also goes on to state the environmental limitations were given little weight due to plaintiff's "repeated denial of significant medication side-effects *and normal breathing capacity*."[182]

Plaintiff's normal breathing capacity is supported by the evidence of record.

---

[179] *Id.*
[180] D.I. 14 at 19.
[181] *Id.*
[182] D.I. 8-2 at 29 (emphasis added).

Plaintiff received medication in the form of Singulair, Proventil, and Advair Diskus.[183]

Further, plaintiff presented with normal lung examinations during the period of alleged

disability, including visits in September 2013, June and August 2014, February, April,

and August 2015, March, June, and October 2016, and January 2017.[184]  Additionally,

spirometry taken in September 2015 revealed only mild obstructive ventilator deficit and

plaintiff has continued to smoke tobacco during this period.[185]  The ALJ found the State

agency consultants' environmental limitations were unsupported by the updated

treatment record and therefore gave them little weight in this determination.[186]  Based

on these findings, the ALJ did not err in excluding the environmental limitations from his

determination.

### d.      Digestive, Bowel, or Bladder Limitations

Lastly, plaintiff argues that the ALJ failed to include symptoms related to her

digestive, bowel or bladder issues which caused limitations on her ability to work.[187]

These symptoms are well-supported in the record during the period of alleged disability,

including a January 2016 EGD which showed a firm 2 centimeter extrinsic compression

in the upper esophagus and moderate erythema in the antrum compatible with

gastritis.[188]  Additionally, plaintiff saw a specialist in October 2016 who diagnosed her

with interstitial cystitis based on symptoms of fecal incontinence, pelvic pain, and

---

[183] *Id.* at 22.
[184] *Id.*
[185] *Id.*
[186] *Id.* at 29.
[187] D.I. 14 at 20.
[188] D.I. 8-13 at 808, 820.

bladder pain.[189]  Plaintiff testified that her bladder issues cause constant pressure,

making it painful to urinate and requiring frequent trips to the restroom due to its sudden

onset.[190]  Plaintiff also testified that this urgency can arise so suddenly that it can cause

leakage.[191]

Defendant argues the ALJ's opinion stated he considered both plaintiff's severe

and non-severe impairments, and this court should take the ALJ "at his word" that he

included her digestive, bladder, and bowel issues.[192]  The ALJ did not, however,

address these limitations at any point in his opinion or explain why he discounted these

findings.  As such, this court recommends that the matter be remanded to address

these limitations and the impact they might have on plaintiff's RFC.

### 3.      The ALJ's RFC Finding

Plaintiff contends the ALJ erred in determining that she had the residual

functional capacity to perform light work.[193]  An RFC is an individual's ability to perform

in a work setting despite impairments and limitations.[194]  The ALJ has the exclusive

responsibility of determining an individual's RFC.[195]  In making this finding, the ALJ

must consider all of the claimant's impairments, including those that are non-severe.[196]

Although the ALJ may weigh the credibility of the evidence, he must indicate the

---

[189] D.I. 8-13 at 913-922.
[190] D.I. 8-2 at 56.
[191] *Id.*
[192] D.I. 17 at 18.
[193] D.I. 14 at 21.
[194] 20 C.F.R. § 404.1545.
[195] 20 C.F.R. § 404.1527(d)(2).
[196] 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416,945.

evidence which he rejects and his reason(s) for discounting such evidence.[197]

The ALJ determined plaintiff had the residual functional capacity to perform light work with the following limitations:  plaintiff is limited to only occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling.[198]  Additionally, she is limited to work that does not involve climbing ladders, ropes, or scaffolds.[199]  The SSA defines work as "light" when it "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[200]

This court finds that this RFC determination of light work was improperly assessed by excluding limitations regarding plaintiff's digestive, bladder, and bowel issues.  In determining plaintiff's RFC, the ALJ did not consider all of her symptoms and the extent to which the symptoms could be considered consistent with the record evidence, or at least failed to explain his reasoning for excluding such limitations.  Since the ALJ did not properly consider the entire record or sufficiently explain in his decision the weight afforded to each source, this matter should be remanded with instructions to reassess plaintiff's RFC based on the excluded limitations established above.

**V.     RECOMMENDED DISPOSITION**

Consistent with the findings herein,

IT IS RECOMMENDED that:

1.  Plaintiff's motion for summary judgment (D.I. 13) be granted in part

---

[197] *Plummer*, 186 F.3d at 429.
[198] D.I. 8-2 at 24.
[199] *Id.*
[200] 20 C.F.R. § 416.967(b).

32

and denied in part;

      2.  Defendant's motion for summary judgment (D.I. 16) be granted in part and denied in part.

It is further recommended the court reverse the Commissioner's decision to the extent noted herein and remand the case in part to the Commissioner with instructions to:

      1.  Address the excluded limitations in the hypothetical question posed to the VE as addressed in this Recommendation; and

      2.  Re-assess plaintiff's residual functional capacity as it pertains to these excluded limitations.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same.  Any response shall be limited to ten (10) pages and filed within fourteen (14) days thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.)

December 5, 2019                           /s/  Mary Pat Thynge
                                     CHIEF U.S. MAGISTRATE JUDGE